UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-62143-CIV-WILLIAMS

JOSEPH OTIS, TRACEY CUPP,
AYUB ADBUL-HAQQ, AND TAMI
PENDERGRAFT, individually and on
behalf of themselves and all others
similarly situated,

    Plaintiff,
vs.
ARISE VIRTUAL SOLUTIONS, INC.,
    Defendant.
_____/

## ORDER ON MOTION TO COMPEL ARBITRATION

**THIS MATTER** is before the Court on Defendant Arise Virtual Solutions, Inc.'s ("Arise") Motion to Compel Arbitration and Stay Proceedings [D.E. 26]. For the reasons stated below, the motion is **GRANTED** as to all Plaintiffs.

**I.**    **BACKGROUND**

On March 13, 2013, Plaintiffs filed their First Amended Class Action Complaint ("Complaint") against Defendant Arise and on behalf of "Customer Support Professionals" ("CSP's") who have worked for Arise. [D.E. 21 at 1]. Plaintiffs assert that by misclassifying employees as Independent Business Owners or agents of Independent Business Owners, Defendant has failed to "pay [employees] minimum wage for all time worked," and required its employees "to pay various expenses that should have been borne by the employer." [*Id.*]. Plaintiffs allege that in doing so, Defendant "violated the federal Fair Labor Standards Act ('FLSA'), 29 U.S.C. §§ 201 *et seq.*, the Florida Minimum Wage Act, Florida Statute § 448.110 and § 24 Art. X of the Florida Constitution." [*Id.*].

1

Defendant filed its Motion to Compel Arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, on April 4, 2013. [D.E. 26]. Defendant states that all Plaintiffs are principal owners of businesses, or were engaged as a CSP by other businesses that "contracted with Arise to provide customer support and other services on a project for an Arise client." [*Id.* at 1]. Defendant asserts that the businesses "agreed to provide these services as independent contractors of Arise and to be solely responsible for providing employment compensation and benefits to all of the persons they engaged to provide these services on their behalf, specifically including Plaintiffs." [*Id.* at 1, 2]. Defendant also asserts that all Plaintiffs entered into valid arbitration agreements with Defendant. [*Id.* at 2]. Defendant requests the Court to enforce those arbitration agreements and compel arbitration. [*Id.*]

Plaintiffs filed their Opposition to Defendant's Motion to Compel Arbitration on April 18, 2013. [D.E. 34]. Plaintiffs assert that Plaintiff Tami Pendergraft and two other opt-in plaintiffs do not recall or have a record of entering into an arbitration agreement with Defendant. [*Id.* at 8-10]. Plaintiffs also argue that the Court should refuse to compel arbitration because the agreements between Plaintiffs and Defendant contain class action waivers. [*Id.* at 15, 16, 17]. Defendant filed a Reply to Plaintiff's Opposition on April 29, 2013. [D.E. 35].

II.   **STANDARD**

The intent of the FAA is to ensure "the enforceability of contractual arbitration provisions." *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 774 (11th Cir. 1999). Under the provisions of chapter 1 of the FAA, a court shall compel arbitration once it determines that certain statutory requirements are met. 9 U.S.C. § 4; *see also Miller v.*

2

*Drexel Burnham Lambert, Inc.*, 791 F.2d 850, 854 (11th Cir. 1986). First, a court must determine if there is a valid agreement to arbitrate. *Id.* The FAA states that a clause in any contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract" will be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2.

A court must also determine whether Plaintiff's claims fall within the scope of the arbitration agreement. *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). If these requirements are met, the FAA requires the Court to compel arbitration. 9 U.S.C. § 4 ("[T]he court **shall** make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.") (emphasis added).

### III.   LEGAL ANALYSIS

#### A.   Enforceability of Arbitration Agreements of Plaintiffs Otis, Cupp and Abdul-Haqq

Plaintiffs Otis, Cupp and Abdul-Haqq are Independent Business Owners that contracted to provide customer support services to Defendant. [D.E. 26 at 1-2]. In its motion, Defendant asserts that Plaintiffs Otis, Cupp and Abdul-Haqq each entered into arbitration agreements with Arise when Plaintiffs signed "Master Services Agreements ("MSAs") and Statements of Work ("SOWs"). [D.E. 26 at 6]. The SOWs contain arbitration agreements that provide:

> Arise and [Plaintiff's Corporation], on behalf of itself and all of Company's Designated CSPs . . . , hereby agree to resolve any and all disputes or claims each may have against the other by binding arbitration...

3

> ...By signing this SOW, all parties waive their right to commence, to become a party to, or to remain a participant in, any group, representative, class, collective, or hybrid class/collective action in any court against one or more other parties to this SOW. Further, the parties waive their right to commence, to become a party to, or to remain a participant in, any group, representative, class, collective, or hybrid class/collective action claim in arbitration or any other forum. The parties agree that any claim by or against any other party to this SOW or any Arise Client shall be heard without consolidation of such claim with any other person or entity's claim...

(Joseph Otis' SOWs, [D.E.27-3 ¶ 13]; [D.E. 27-4 ¶ 12]); (Tracey Cupp's SOWs, [D.E. 27-6 ¶ 13]; [D.E. 27-7 ¶ 13]); (Ayub Adbul-Haqq's SOWs, [D.E. 27-9 ¶ 13]; [D.E. 27-10 ¶ 13]). The signed MSAs contain similar arbitration provisions. (Joseph Otis' MSA, [D.E. 27-2 § 10]); (Tracey Cupp's MSA, [D.E. 27-5 § 10]); (Ayub Abdul Haqq's MSA, [D.E. 8 § 10]). The Independent Business Owner Plaintiffs do not deny that they signed these arbitration agreements, nor that these broad arbitration agreements encompass their claims. [D.E. 34]. Therefore, the Court finds that Plaintiffs Joseph Otis, Tracey Cupp, and Ayub Abdul Haqq have entered into valid and enforceable arbitration agreements with Defendant and their claims fall within the scope of these agreements.

### B. Enforceability of Arbitration Agreement of Plaintiff Tami Pendergraft

Plaintiff Tami Pendergraft is in a different position than the other three named Plaintiffs, because she was not an independent business owner. [D.E. 26 at 5]. Rather, Pendergraft was an employee of Lumbu, Inc. ("Lumbu"), a company providing services to Defendant. [*Id.*]. Defendant asserts that Pendergraft, as a CSP affiliate of Lumbu, individually and electronically signed an Acknowledgment and Waiver Agreement,

("Agreement")[1], in which Pendergraft agreed to "resolve any disputes with Arise through binding arbitration and waive her right to pursue class or collective actions." [*Id.*]. The Agreement states:

> Company and Client Support Professional hereby agree to resolve any and all disputes or claims each may have against the other, and Client Support Professional hereby agrees to resolve any and all disputes that he or she may have against Arise or any client of Arise...by binding arbitration...
>
> By signing this Agreement, all parties waive their right to commence, to become a party to, or to remain a participant in, any group, representative, class, collective, or hybrid class/collective action in any court against one or more of the parties to this Agreement, Arise or any client of Arise.

[D.E. 31-1 § 7, 10]. Thus, Defendant argues that because the Agreement is valid and enforceable, the Court should compel arbitration. [D.E. 8, 10].

Pendergraft contends that she has no memory of signing the Agreement or any other document that contained an arbitration clause and claims that the Agreement is invalid. [D.E. 34-1 ¶¶ 4, 5]. Furthermore, Pendergraft challenges the authenticity and validity of the electronic signature found on the Agreement, stating that Defendant has offered no evidence that Pendergraft consented to the use of an electronic signature. [D.E. 34 at 8].

"The party seeking to avoid arbitration must unequivocally deny that an agreement to arbitrate was reached and must offer 'some evidence' to substantiate the denial." *Brueggemann v. NCOA Select, Inc.*, No. 08-80606-Civ, 2009 WL 1873651, at *2 (S.D. Fla. Jun. 30, 2009) (citing *Wheat, First Securities, Inc. v. Green*, 993 F.2d 814,

---

[1] Lumbu and Pendergraft are parties to this Agreement. Defendant Arise is named as a third party beneficiary to the Agreement.

5

817 (11th Cir. 1993)). A party cannot place the making of an arbitration agreement in issue merely by denying that an agreement exists, but must substantiate the denial with enough evidence to make the denial colorable. See Williams v. MetroPCS Wireless, Inc., No. 09-22890-Civ, 2010 WL 62605, at *8 (S.D. Fla. Jan. 05, 2010) (citing Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 855 (11th Cir. 1992)).

Aside from Pendergraft's lack of recollection, Plaintiffs fail to offer any evidence to substantiate Pendergraft's denial that an agreement to arbitrate was reached. The Agreement provides a Signature ID number, lists Pendergraft as the signer and displays Pendergraft's email address.[2] [D.E. 31-1 at 3]. Additionally, Plaintiffs have not given the Court any reason to question whether Defendant had adequate electronic security procedures. Consequently, Pendergraft's lack of recollection, on its own, does not sufficiently substantiate her denial that an agreement to arbitrate was reached.[3]

Finally, Plaintiffs assert that because Defendant did not obtain Pendergraft's consent to use an electronic signature, the electronic signature on the Agreement is invalid. [D.E. 34 at 8]. However, Plaintiffs fail to cite any authority that supports the dubious proposition that one must consent to the use of an electronic signature in order to sign an electronic contract. A signature or contract "may not be denied legal effect, validity, or enforceability solely because it is in electronic form." 15 U.S.C. § 7001(a)(1); see also Fla. Stat. § 668.004 ("Unless otherwise provided by law, an electronic

---

[2] Plaintiffs do not deny that the email address listed in the Agreement is Pendergraft's email address.

[3] The Court questions whether Pendergraft's lack of recollection constitutes an unequivocal denial that an agreement was reached. Plaintiff has not cited any authority that suggests a lack of recollection is, on its own, sufficient to dispute the validity of a signature or contract.

signature may be used to sign a writing and shall have the same force and effect as a written signature."). Accordingly, Plaintiffs' argument is unavailing.

For the Court to compel arbitration, the FAA also requires that a plaintiff's claims fall within the scope of the arbitration agreement. See *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Pendergraft does not refute Defendant's assertion that the claims fall within the scope of the Dispute Resolution Agreement. [D.E. 34]. The Agreements reads in pertinent part, "Client Support Professional hereby agrees to resolve **any and all disputes that he or she may have against Arise** or any client of Arise…by binding arbitration…" [D.E. 31-1 § 7] (emphasis added). Accordingly, the Court finds that Pendergraft's claims are within the scope of this broad arbitration agreement. In sum, Pendergraft entered into a valid arbitration agreement with Defendant and Pendergraft's claims are within the scope of the arbitration agreement.[4]

### C.   Class Action Waivers

Each of the arbitration agreements between Plaintiffs and Defendant contains a class action waiver, which Plaintiffs contend render the arbitration agreements unenforceable. [D.E. 34 at 15-17]. However, "[t]he FAA's overarching purpose is to ensure the enforcement of arbitration agreements according to their terms." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1743 (2011). Courts in this Circuit have regularly enforced arbitration agreements that contain class action waivers. *See, e.g., Jenkins v. First. Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 877-78 (11th Cir. 2005);

---

[4] Opt-in plaintiffs Amanda Barton and Heather Steele also deny having any memory of entering into arbitration agreements with Arise. Plaintiffs' arguments regarding these opt-in plaintiffs are irrelevant because the opt-in plaintiffs are not named parties in this suit. Nevertheless, the Court finds their arguments equally unavailing.

7

*Randolph v. Green Tree Fin. Corp.—Alabama*, 244 F.3d 814, 819 (11th Cir. 2001); *La Torre v. BFS Retail & Commercial Operations, LLC*, No. 08-22046-CIV, 2008 WL 5156301, at *5 (S.D. Fla. Dec. 08, 2008); *see also McKenzie Check Advance of Florida, LLC v. Betts*, 112 So.3d 1176, 1188 (Fla. 2013). Consequently, the class action waivers do not undermine the enforceability of the arbitration agreements between Plaintiffs and Defendant.

### IV. Conclusion

Plaintiffs entered into valid and enforceable arbitration agreements with Defendant, and their claims in this case fall within the scope of those agreements. Therefore, pursuant to 9 U.S.C. § 4, the Court is obligated to compel arbitration as to all Plaintiffs. Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

(i) Defendant's Motion to Compel Arbitration [D.E. 26] is **GRANTED**. Plaintiffs are hereby ordered to submit to arbitration in accordance with the terms of their respective agreements.

(ii) Judicial proceedings in this matter are **STAYED**. The parties are ordered to notify the Court within 72 hours of the issuance of any final arbitration award as to each Plaintiff, or any settlement that resolves the issues in this case.

(iii) Despite the fact that the named Plaintiffs' claims are subject to arbitration, Plaintiffs argue that the Court should allow notice to issue to potential class members. [D.E. 34 at 11]. However, arbitrability is a threshold issue, and as a result of the Court's decision, there are no named Plaintiffs that can maintain this suit on behalf of themselves and other "employees" similarly

situated. See 29 U.S.C. § 216(b). Consequently, the Motion to Facilitate Notice to Potential Plaintiffs [D.E. 22] is **DENIED AS MOOT**.

(iv)  The Clerk is directed to **CLOSE** this case for administrative purposes.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 2 day of August, 2013.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE